# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

United States of America,

        Plaintiff,

v.

Adrian Joseph Valdez,

        Defendant.

**MEMORANDUM OPINION AND ORDER**
Criminal No. 18-282 ADM/LIB

_____

Deidre Y. Aanstad, Assistant United States Attorney, United States Attorney's Office, Minneapolis, MN, on behalf of Plaintiff.

R.J. Zayed, Esq., Dorsey & Whitney LLP, Minneapolis, MN, on behalf of Defendant.

_____

## I. INTRODUCTION

This matter is before the undersigned United States District Judge for a ruling on Defendant Adrian Joseph Valdez's ("Valdez") Objections [Docket No. 50] to Magistrate Judge Leo I. Brisbois' February 7, 2019 Report and Recommendation [Docket No. 48] ("R&R"). In the R&R, Judge Brisbois recommends denying Valdez's Motion to Suppress Statements [Docket No. 31] and Motion to Suppress Evidence [Docket No. 32]. After a de novo review of the record and for the reasons stated below, Valdez's Objections are overruled and the R&R is adopted.

## II. BACKGROUND[1]

### A. August 10, 2018 Events

On August 10, 2018, Red Lake Police Sergeant Kendall Kingbird ("Sgt. Kingbird") responded to a "911" call reporting a stabbing at Avis Laduke's ("Laduke") residence (the

---

[1] A full recitation of the facts is presented in the R&R and is incorporated by reference. A condensed version of the facts is presented here.

"Laduke Residence").

Sgt. Kingbird pulled into the Laduke driveway where he observed Valdez walking down the driveway towards him. As he approached Sgt. Kingbird, Valdez put his hands up and dropped the beer he was holding. As Sgt. Kingbird parked his patrol vehicle, Valdez dropped to his knees and put his hands behind his back. After Sgt. Kingbird got out of his vehicle and approached Valdez on foot, he saw blood on Valdez and asked Valdez if he was injured. Valdez responded, "no." Valdez then laid down on the driveway and put his hands behind his back without any instruction from Sgt. Kingbird. Valdez then stated, "I stabbed them, take me to jail." After hearing this statement, Sgt. Kingbird handcuffed Valdez and advised him of his Miranda[2] rights.

Sgt. Kingbird and Valdez waited approximately 15 minutes near the patrol vehicle for a transport vehicle to arrive and take Valdez to the Red Lake Detention Center. While they waited, two individuals arrived and identified themselves as relatives of the stabbing victims. Valdez and the individuals engaged in a shouting match. Valdez repeated his request that Sgt. Kingbird take him to jail, shouted at the individuals, complained that the people wanted to "start shit with him," and again told Sgt. Kingbird that he had "stabbed them."

After another officer took custody of Valdez for transport, Sgt. Kingbird walked to the Laduke Residence. He observed blood smears on the porch, as well as beer cans. Sgt. Kingbird also saw blood on the ground surrounding the porch. He knocked on the door of the house, but no one answered. Sgt. Kingbird took photographs of the porch while he waited for other police officers to arrive. At one point while Sgt. Kingbird was waiting outside, Laduke exited her front

---

[2] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602 (1966).

door and spoke briefly with Sgt. Kingbird. Laduke appeared to be intoxicated because her speech was slurred and she smelled of alcohol. During their brief discussion, Laduke told Sgt. Kingbird that her son and her nephew had been stabbed, and she said that her son was still inside the house. Sgt. Kingbird asked if he could check on her son and she told him "no."

Criminal Investigator Geoff Pierre ("CI Pierre") of the Red Lake Tribal Police Department arrived after this conversation. After speaking to Sgt. Kingbird, the two officers returned to the Laduke Residence. Laduke was on the porch. There is no evidence Laduke objected to CI Pierre and Sgt. Kingsbird entering her house. The officers found Laduke's son, Robert McGregor, was injured and summoned an ambulance. The officers then asked the other people in the house to gather in the living room to ascertain if there were any other injuries. The house was not searched. Special Agent Mark Meyers ("SA Meyers") of the Federal Bureau of Investigation arrived soon after the individuals were gathered in the living room. SA Meyers took charge of processing the crime scene. The officers conducted an unfruitful search outside of the house, looking for the knife used in the stabbing. The officers did not go back in the house.

**B. August 15, 2018 Interview**

Five days after Valdez's arrest, SA Meyers interviewed Valdez. The interview took place in a conference room at the Red Lake Police Department, which is attached to the Red Lake Detention Center where Valdez had been held since his arrest on August 10, 2018. Criminal Investigator Ron Leyba joined the interview. SA Meyers read Valdez his <u>Miranda</u> rights. SA Meyers then asked Valdez to read aloud the consent statement included within the Advice of Rights document. Valdez did so. SA Meyers asked Valdez if he understood the

3

consent form and Valdez responded, "Yeah, I don't have anything to hide." Valdez then signed the Advice of Rights form. SA Meyers then interviewed Valdez for approximately half an hour.

### III. DISCUSSION

#### A. Standard of Review

"A district judge may refer to a magistrate judge for recommendation a defendant's motion to dismiss or quash an indictment or information, a motion to suppress evidence, or any matter that may dispose of a charge or defense." Fed. R. Crim. P. 59(b)(1). In reviewing a magistrate judge's report and recommendation, the district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); see also D. Minn. L.R. 72.2(b). A district judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." Id.

#### B. Motion to Suppress Statements

Valdez objects to the R&R's recommended denial of his Motion to Suppress the statements he made on August 10, 2018 and August 15, 2018. Valdez argues his that his August 10 statements were the product of custodial interrogation, and were involuntary, and, his August 15 interview was not the product of a knowing, intelligent, and voluntary waiver of Miranda rights. None of Valdez's objections support modifying or overruling Judge Brisbois' recommendations.

**1. Spontaneous August 10, 2018 Statements**

Valdez argues he was in custody on August 10 when he told Sgt. Kingbird he was not injured and then said "I stabbed them, take me to jail." Valdez contends that all his interactions

4

with Sgt. Kingbird amounted to custodial interrogation. Finally, Valdez argues that he was too severely intoxicated to waive his Miranda rights once he was in custody.

The Eighth Circuit has explained, "Miranda does not protect an accused from a spontaneous admission made under circumstances not induced by the investigating officers or during a conversation not initiated by the officers." United States v. Crisolis-Gonzalez, 742 F.3d 830, 837 (8th Cir. 2014) (quoting United States v. Hayes, 120 F.3d 739, 744 (8th Cir. 1997)). Contrary to Valdez's argument, the law and logic do not support custodial interrogation being established merely by Sgt. Kingbird approaching Valdez, asking him if he was injured, and standing over him while Valdez was sprawled on the driveway. Sgt. Kingbird had just arrived on the scene and was reasonably assessing whether Valdez was a victim, suspect, or bystander when Valdez spontaneously uttered, "I stabbed them, take me to jail." Sgt. Kingbird obliged by taking Valdez into custody and handcuffing him. There is no evidence that Sgt. Kingbird asked Valdez any questions during the period of time that the two waited for the transporting officer. Valdez's spontaneous statements in response to Laduke relatives, who presented themselves at the scene, were not induced or elicited by Sgt. Kingbird. The R&R correctly determined Valdez "voluntarily offered the statements to Sgt. Kingbird without any words or actions by Sgt. Kingbird which were reasonably likely to elicit an incriminating response from" Valdez. See R&R, at 12-13.

Valdez also claims that his statements were involuntary by reason of his intoxication. Judge Brisbois thoroughly addressed this contention, and the Court agrees with his analysis and conclusion in the R&R, that Valdez's August 10 statements were voluntary. The Objection to the R&R raises no arguments not previously considered.

5

### 2. August 15, 2018 Statements

Valdez briefly argues, without citation to law, that his August 15, 2018 statements were not the product of a knowing, intelligent waiver of his Miranda rights because he verbally stumbled over his reading of the Miranda rights acknowledgment before he signed the waiver. Without further indicia of unknowing, or unintelligent waiver, simply stumbling over the reading of his rights is not indicative of involuntary waiver. As Judge Brisbois noted, the officers used multiple appropriate methods to communicate to Valdez his rights and secure Valdez's knowing waiver. "[T]he record ... clearly demonstrates that Defendant was read a Miranda warning from an Advice of Rights form before the interrogation portion of the interview began, that he himself read the consent statement on that Advice of Rights form aloud, and that he signed the waiver on the Advice of Rights form, as well as, gave a verbal confirmation that he understood the Advice of Rights form." R&R, at 18. Nothing in the interview reflects Valdez's present claim of confusion amounting to an invalid waiver of rights.

Valdez raised one further tangential issue at the motion to suppress hearing before Judge Brisbois, and raised it again briefly without citation to law in his objections to the R&R. Valdez argues that the Government failed to present Valdez to a judicial officer within a reasonable time after his arrest. It is unclear, even if true, how this would make Valdez's August 15 statements involuntary. Additionally, the record shows that Valdez was in the custody of the sovereign and separate Red Lake Tribal authorities, not the Federal Government. Therefore, as Judge Brisbois correctly ruled, presentment is not at issue and does not weigh on the issue of waiver in the Federal Government's case. R&R, 22-23.

There is no evidence Valdez's August 10 and August 15 statements were extracted

through coercive acts of the arresting or interrogating officers. Nor is there any evidence suggesting that Valdez was lured into speaking through direct or implied promises. To the contrary, Valdez's statements within hearing of Sgt. Kingbird on August 10 were spontaneous, and Valdez's waiver of his Miranda rights on August 15 was voluntary, knowing, and intelligent under the totality of circumstances test. For these reasons, Valdez's motion to suppress his statements is denied.

## C. Motion to Suppress Physical Evidence

Valdez objects to the R&R's conclusion that Valdez lacks standing to challenge the Government's search of the Laduke Residence, and to the R&R's alternative conclusion that, even if Valdez does have standing, the warrantless entry into the Laduke Residence was lawful. Valdez argues that he had standing to challenge the search because he was an "overnight guest" and that the Government did not meet its burden of showing Laduke voluntarily consented to the officers' entrance.

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. Amend. IV. But, "suppression of the product of a Fourth Amendment violation can be successfully urged only by those whose rights were violated by the search itself, not by those who are aggrieved solely by the introduction of damaging evidence." Alderman v. United States, 394 U.S. 165, 171-72 (1969). Furthermore, "[t]he Fourth Amendment's general prohibition against warrantless searches does not apply when officers obtain voluntary consent from the person whose property is searched or from a third party with common authority over the property." United States v. Esparza, 162 F.3d 978, 980 (8th Cir. 1998) (citing Illinois v.

7

Rodriguez, 497 U.S. 177, 181 (1990)).  Voluntary consent does not need to rise to the level of waiver and can be voluntary without being an "intentional relinquishment or abandonment of a known right or privilege."  United States v. Chaidez, 906 F.2d 377, 380 (8th Cir. 1990) (quoting Schneckloth v. Bustamonte, 412 U.S. 218, 235 (1973)).

A de novo review of the record in this case supports Judge Brisbois' conclusions and application of the law.  Valdez relies solely on testimony from CI Pierre as evidence of his status as an "overnight guest."  CI Pierre testified that it was "possible" that guests, many of whom were drinking alcohol, may have slept overnight at the Laduke Residence.  Valdez argues that his level of intoxication suggests he would have stayed overnight.  But, Valdez has the burden of showing that he has standing.  See United States v. Maxwell, 778 F.3d 719, 732 (8th Cir. 2015); R&R, 24-25.  Valdez has offered no corroborating evidence that he planned to stay the night, much less had an "expectation of privacy in the home that society is prepared to recognize as reasonable."  See Minnesota v. Olson, 495 U.S. 91 (1990).  There is no evidence that there were any accommodations prepared for him.  No evidence of an invitation to stay or of any type of overnight bag.  Therefore, without standing, Valdez cannot challenge a search of the Laduke Residence.

Even if Valdez were to muster evidence of standing, the Court agrees with Judge Brisbois' alternative analysis of Avis Laduke's implied consent to entry and the officers' legitimate concern that the other stabbing victim may need emergency assistance.  The officers had at least two legitimate grounds on which to justify both their presence on the property and their limited presence within the Laduke Residence.  Furthermore, the record shows that the officers did not search Laduke's home beyond ascertaining the welfare of the residents.  They

restricted their investigation to the scene of the suspected crime, on the porch and grounds outside Laduke's home.  For these reasons, Valdez's motion to suppress evidence is denied.

## IV.  CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant Adrian Joseph Valdez's Objections [Docket No. 50] to Magistrate Judge Leo I. Brisbois' February 7, 2019 Report and Recommendation [Docket No. 48] are **OVERRULED**;

2. The Report and Recommendation [Docket No. 48] is **ADOPTED**;

3. Defendant's Motion to Suppress Statements [Docket No. 31] is **DENIED**; and

4. Defendant's Motion to Suppress Evidence [Docket No. 32] is **DENIED.**

BY THE COURT:


　　　s/Ann D. Montgomery　　　
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  April 3, 2019.